UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT

| | |
|---|---|
| DAN-BUNKERING (AMERICA) INC. | |
| AND | CASE NO.: 1:20-cv-00364-TFM-C |
| SUPPLEO BUNKERING S. de R.L. de C.V. | |
| VERSUS | |
| M/V GLOBAL ORION, *in rem*, | |
| AND | |
| NAVARRO CAPITAL PARTNERS, LLC, *in personam/quasi in rem,* | |
| AND | |
| The Master of the M/V GLOBAL ORION And/or Substitute Custodian, *Garnishee* | |

\* \* \* \* \* \* \*

## FIRST AMENDED VERIFIED COMPLAINT

NOW COME Plaintiffs Dan-Bunkering (America) Inc. ("Dan-Bunkering") and Suppleo Bunkering S. de R.L. de C.V. ("Suppleo") and, pursuant to Fed. R. Civ. P. 15(a)(1)(B),[1] file this First Amended Verified Complaint against M/V GLOBAL ORION, her engines, tackle, apparel, etc., *in rem* ("Vessel") in causes of breach of maritime contract and foreclosure of maritime liens, and for Dan-Bunkering, further in against Navarro Capital Partners, LLC ("Navarro") *quasi in rem* pursuant to Supplemental Admiralty Rule B for attachment of property of Navarro in this District, namely, the Vessel and all property of Navarro, including fuel ("bunkers") aboard or adjacent to the Vessel, as follows:

---

[1] Navarro as claimant to the Vessel answered the Verified Complaint [ECF 28] on August 14, 2020. Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiffs file this First Amended Verified Complaint as a matter of course within 21 days after Navarro's answer.

**Jurisdiction**

1.

This claim is within the Court's admiralty jurisdiction pursuant to 28 U.S.C. §1333, and the Federal Maritime Lien Act, 46 U.S.C. §31301, et seq. This is an admiralty and maritime claim within the meaning Rule 9(h) of the Federal Rules of Civil Procedure.

2.

Plaintiff Dan-Bunkering is a duly organized and existing corporation under the laws of Texas with its principal place of business located in Houston, Texas.  Suppleo is a duly organized and existing corporation under the laws of Mexico with its principal place of business located in Miguel Hidalgo México D.F.  Both Dan-Bunkering and Suppleo provide marine fuel ("bunkers") to ocean going vessels, including the Vessel.

3.

M/V GLOBAL ORION (the "Vessel") is a 90.9 meter Mexico-flagged offshore support vessel bearing Official No. 9249439, is property of Navarro and is arrested by the United States Marshal pursuant to Supplemental Rule C and within the jurisdiction of this Honorable Court.

4.

Navarro is the owner of the Vessel and cannot be found within this District within the meaning of Supplemental Rule B, including because Navarro has no resident agent present in this District authorized to receive service of process.

**Facts**

5.

On about June 19, 2019, Suppleo, at the request of the Vessel's then-charterer Ranger Offshore Mexico De RL De Cv, provided $226,349.77 of bunkers to the Vessel at Ciudad del

Carmen, Mexico.  Suppleo subsequently was paid for part of this provision, leaving overdue a remaining amount of **$135,967.70** as set out immediately below:

| Document Type | Document No. | Description | Currency | Original Amount | Remaining Amount | Due Date |
|---|---|---|---|---|---|---|
| Invoice | SI100458 | SUB 365 - GLOBAL ORION 06/19/19 | USD | 226,349.77 | 135,967.70 | 09-17-2019 |

6.

Then, on or about January 28, 2020, Dan-Bunkering, at the request of Frontera Offshore SA de CV ("Frontera"), which Navarro as owner of the Vessel had authorized, and through direct communication not only with Frontera but also confirmed by acceptance of the bunkers by the Master of the Vessel, an employee of Navarro, including but not limited to Frontera acting as Navarro's actual or apparent agent, provided $510,300 of bunkers to the Vessel, none of which has been paid, as set out immediately below:

| Document Type | Document No. | Description | Currency | Original Amount | Remaining Amount | Due Date |
|---|---|---|---|---|---|---|
| Invoice | 66417 | GLOBAL ORION 01/28/20 | USD | 510,300.00 | 510,300.00 | 04-28-2020 |

7.

Suppleo provided the bunkers to the Vessel subject to agreed sales terms and conditions, including the following:

8. Title

8.1 The Seller retains title to the Bunker Oil delivered to the Vessel until the Invoice has been paid in full in so far as the Seller has this right according to the law of the place of

delivery or according to the law of the Vessel's flag state or according to the law at the location where the Vessel is found.

9. Arrest of Vessel

9.1 The Bunker Oil supplied to the Vessel is sold and delivered on the credit of the Vessel, as well as on the promise of the Buyer to pay therefore, and the Buyer agrees and warrants that the Seller shall have and may assert a maritime lien against the Vessel and may take such other action or procedure against the Vessel and any other vessel or asset beneficially owned or controlled by the Buyer, for the amount due for the Bunker Oil and the delivery thereof. The law of the United States, including but not limited to, the General Maritime Law of the United States, along with 46 USC §31341 and 46 USC §31342 of the United States Code, shall apply with respect to the existence of a maritime lien regardless of the country in which Seller takes legal action. However, the choice of law is for the sole benefit of the Seller and the Seller may apply and benefit from any other law granting a maritime lien and/or right to arrest the Vessel in any country. Nothing in this Bunker Contract shall be construed to limit the rights or legal remedies that the Seller may enjoy against the Vessel or the Buyer in any jurisdiction.

\* \* \*

16. Law and Jurisdiction

16.1 The Bunker Contract shall be governed by the laws of the United States of America ("United States") and in the event that the laws of the United States are silent on a disputed issue, then the laws of the state of Texas, which shall include the United Nations Convention on Contracts for the International Sale of Goods (1980), without reference to any conflict of law rules. The laws of the United States, including but not limited to, the General Maritime Law of the United States, along with 46 USC §31341 (Persons presumed to have authority to procure necessaries) and 46 USC §31342 (Establishing maritime liens) of the United States Code, shall apply with respect to the existence of a maritime lien regardless of the country in which Seller takes legal action. The choice of law is for the sole benefit of the Seller and the Seller may apply and benefit from any other law granting a maritime lien and/or right to arrest the Vessel in any country as stipulated in Section 9 hereof.

8.

Dan-Bunkering provided the bunkers to the Vessel subject to agreed sales terms and

conditions, including the following:

7. PROPERTY AND RISK

7.1 Title to the Products shall pass only when the Buyer has paid for the Products and paid all other sums due to the Seller under the relevant Contract or other Contracts.

* * *

13. LIEN

13.1 It is agreed and acknowledged that a lien over the Vessel is created for the price of the Products supplied together with any interest accrued. The Buyer, if not the Owner of the Vessel, hereby expressly warrants that they have full authority of the Agents/Traders/Owners/Managers/Operators/Charterers to pledge the Vessel in favour of the Seller and that they have given notice of the provisions of this Contract to them. The Seller shall not be bound by any attempt by any person to restrict, limit or prohibit its lien(s) attaching to a Vessel.

13.2 The laws of the United States, including but not limited to the Commercial Instruments and Maritime Lien Act, shall always apply with respect to the existence of a maritime lien, regardless of the country in which the Seller takes legal action. The Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity, or otherwise, in any jurisdiction where the Vessel may be found.

13.3 The Buyer or the Vessel or its owners must notify the Seller of its intention to exclude the liability of the Vessel at least 12 hours in advance of the supply by sending written notice to legal@dan-bunkering.com, failing which any notice or any stamp in the Bunker Delivery Note seeking to vitiate the Seller's maritime lien on the Vessel shall be of no effect.

* * *

18. LAW AND JURISDICTION

18.1 These STCS and all Contracts are governed by the general maritime law of the United States of America and disputes shall be determined by Arbitration in London by a sole arbitrator according to the LMAA Rules 2017. The laws of the United States, including but not limited to the Commercial Instruments and Maritime Lien Act, shall always apply with respect to the existence of a maritime lien, regardless of the country in which the Seller takes legal action. In case of breach of contract by the Buyer, the Seller shall be entitled to take such legal action in any court of law in any state or country which the Seller may choose and which the Seller finds relevant in order to safeguard or exercise the Seller's rights in pursuance of this present Agreement. The Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity, or otherwise, in any jurisdiction where the Vessel may be found.

9.

The foregoing pre-arrest bunkers provided to the Vessel by Suppleo, and Dan-Bunkering equipment and services furnished to the Vessel, were necessary for the operation of the Vessel in its ordinary course of trade, and have not been paid for as set out above despite amicable demand.

10.

Pursuant to the attached Verification, the foregoing allegations are true and correct.

11.

Pursuant to United States general maritime law and the United States Commercial Instruments and Maritime Act, Suppleo and Dan-Bunkering hold maritime liens against the Vessel, *in rem* as set out above, plus any additional invoices that may become due, pre-judgment interest, post-judgment interest, costs and other expenses.

12.

Suppleo and Dan-Bunkering are entitled to have this Court recognize their lien(s) against the Vessel and are entitled also to judgment against the vessel in the full amount of their claims, plus interest and costs.

13.

Suppleo and Dan-Bunkering are entitled to have the Vessel, the Vessel's engines, tackle, apparel, etc.*, in rem*, seized and sold by the United States Marshal to satisfy their claim and said lien(s) asserted herein.

**COUNT I – MARITIME LIENS *IN REM*
AGAINST THE VESSEL**

14.

Suppleo and Dan-Bunkering repeat the foregoing paragraphs.

15.

Suppleo and Dan-Bunkering each hold maritime liens *in rem* against the Vessel in the amounts specified above, and as demanded below.

**COUNT II – FOR DAN-BUNKERING
AGAINST NAVARRO *QUASI IN REM*
SUPPLEMENTAL RULE B ATTACHMENT**

16.

Dan-Bunkering repeats the foregoing paragraphs and brings this claim against Navarro, pursuant to Supplemental Admiralty and Maritime Rule B, *quasi in rem* as owner of the Vessel and recipient and beneficiary of the bunkers which Dan-Bunkering provided to the Vessel.

17.

Navarro contends mistakenly that Dan-Bunkering provided the bunkers to the Vessel without Navarro's authority. First, at or near the time Dan-Bunkering provided the bunkers to the Vessel, Dan-Bunkering gave Navarro written notice that Dan-Bunkering retained title over the bunkers until paid. Dan-Bunkering was never notified that the entity ordering the bunkers on behalf of Navarro and for the Vessel was unauthorized to do so and to bind the Vessel with a maritime lien. Second, the Master of the Vessel or the Master's authorized crew member, who also at the time was Navarro's employee, accepted the bunkers on board the Vessel. Navarro then proceeded to use and benefit from the bunkers, including, selling the bunkers to a third party.

18.

If, contrary to Navarro's contention, Navarro had authorized Frontera to order the bunkers on Navarro's behalf and for Dan-Bunkering to provide to the Vessel, Navarro then is liable as principal to Dan-Bunkering for breach of contract, for failing to pay for the bunkers.

19.

In the alternative, Navarro took the bunkers for its own use and converted the bunkers, including, without holding title, sold the bunkers and received money for that sale to its own account.

20.

In the alternative, Navarro further was unjustly enriched by the amount of the bunkers which Dan-Bunkering provided to the Vessel, accepting but not paying for the bunkers, being on notice that Dan-Bunkering held title to the bunkers, and then using and/or selling the bunkers to Navarro's own account.

21.

Navarro therefore is liable to Dan-Bunkering for breach of contract, or in the alternative, for conversion and/or unjust enrichment, in the amounts demanded below.

WHEREFORE, Suppleo and Dan-Bunkering pray, **in response to Count I**:

A.

That process in due form of law in a cause of admiralty and maritime jurisdiction continue to issue against the Vessel, the Vessel's engines, tackle, apparel, etc., *in rem*, and that all persons having or claiming any interest in said vessel be cited to appear and answer;

B.

That the warrant of arrest of the Vessel, the Vessel's engines, tackles and apparel be maintained as served by the United States Marshal in this action; and

C.

That after due proceedings are had, judgment be entered against the Vessel, *in rem* in favor of Suppleo for the sum of $135,967.70, and in favor of Dan-Bunkering in the sum of $510,300.00 and any additional amounts due, plus interest and costs and expenses *custodia legis*.

Suppleo and Dan-Bunkering further pray that the Vessel, the Vessel's engines, tackle and apparel, continue to be seized, and be condemned and sold to pay such sums.

Dan-Bunkering further prays as follows, **in response to Count II**:

E.

That in response to Count II, since Navarro cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Navarro's tangible or intangible property in this District including any other funds held by any Garnishee, and including the Vessel and all bunkers aboard the Vessel, up to the amount of $510,300.00 and any additional amounts due, plus contractual interest, attorneys' fees and costs, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in this First Amended Verified Complaint.

F.

That after due proceedings are had, judgment be entered against Navarro, *quasi in rem* in favor of Dan-Bunkering in the sum of $510,300.00 and any additional amounts due, plus contractual interest, attorneys' fees and costs and expenses *custodia legis,* and that the Vessel and all other property of Navarro subject to the writ of garnishment be seized, and be condemned and sold to pay such sums.

G.

That in response to all counts, Suppleo and Dan-Bunkering pray further that this Court

grant them such other and further relief that this Court deems just and proper.

Dated:  August 31, 2020

                                              Respectfully submitted,

| | |
|---|---|
| PAUL T. BECKMANN (BECKP0493) | */s/ J. Stephen Simms* |
| HAND ARENDALL HARRISON SALE LLC | J. Stephen Simms |
| | Simms Showers LLP |
| Post Office Box 123 | 201 International Circle, Suite 250 |
| Mobile, Alabama 36601 | Baltimore, Maryland 21030 |
| Telephone: (251) 432-5511 | Telephone: (443) 290-8704 |
| Facsimile: (251) 694-6375 | Facsimile: (410) 510-1789 |
| E-mail: pbeckmann@handarendall.com | E-mail: jssimms@simmsshowers.com |

                                    *Suppleo and Dan-Bunkering Counsel*

## **Verification**

J. Stephen Simms certifies as follows:

1. I am the age of majority and competent to make this verification;

2. I am a principal of the law firm of Simms Showers LLP and represent Suppleo and Dan-Bunkering in this action;

3. Suppleo and Dan-Bunkering do not have a corporate officer in the district to make this Verification;

4. Suppleo's and Dan-Bunkering's attorney-in-fact, I declare that I have read the foregoing Verified Complaint and know its contents; that the same is true and correct to the best of my knowledge and belief; and that the source of my knowledge and the grounds for my belief are various documents and information furnished to me by Suppleo and Dan-Bunkering;

5. I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers in this District, and of the Alabama Secretary of State.  There is no record of any general or resident agent authorized to accept service of process for Navarro in this District.

6. I have specific authorization and am duly authorized to make this Verification.

      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

      Executed on August 31, 2020.

      */s/ J. Stephen Simms*

- 12 -

## **CERTIFICATE OF SERVICE**

I certify that on August 31, 2020 I caused the foregoing to be filed on this Court's CM/ECF system to be served on all record counsel.

*/s/ J. Stephen Simms*